UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x

OSCAR PEREZ and DANIEL BENAVIDES,

                    Plaintiff,

     -against-                                                    1:23-cv-00447 (CM)

CITY OF NEW YORK, et al.
                              Defendants.

———————————————————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/29/24

**DECISION AND ORDER GRANTING DEFENDANT EMILIO MELENDEZ'S MOTION TO JOIN THE MOTION TO DISMISS DATED JUNE 26, 2023, GRANTING DEFENDANTS' MOTION TO DISMISS, AND GRANTING PLAINTIFFS' CROSS MOTION TO AMEND COMPLAINT**

McMahon, J.:

Plaintiffs Oscar Perez ("Perez") and Daniel Benavides ("Benavides") are officers with the New York City Police Department ("NYPD"). They sue the City of New York, the NYPD, (now former) Police Commissioner Keechant L. Sewell ("Sewell" or "Commissioner Sewell") and five NYPD officers (collectively "City Defendants"), alleging that they were discriminated against in the terms and conditions of their employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e-17, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296. The Plaintiffs allege that they were subjected to discrimination on virtually every possible basis – national origin, race, ethnicity, age, and/or gender. They also allege that they were subjected to a hostile workplace environment and that they were retaliated against when they complained about the discrimination from which they suffered.

The City Defendants move to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendant Emilio Melendez, who had not yet been served when the other Defendants filed their motion to dismiss, seeks leave to join his co-defendants' motion. In response to the motion to dismiss, Plaintiffs cross move for leave to amend their complaint pursuant to Fed. R. Civ. P. 15.

Melendez's motion to join the other Defendants' motion to dismiss is GRANTED without opposition. The motion to dismiss is GRANTED, and Plaintiffs' cross motion for leave to amend their complaint is GRANTED.

# BACKGROUND

## I.    THE PARTIES

Plaintiffs are Oscar Perez and Daniel Benavides (collectively "Plaintiffs"), Hispanic males who work for Defendant NYPD as police officers assigned to the 46th Police Precinct within Bronx County. Am. Compl. (ECF No. 7) ("AC") ¶¶ 4-5, 7, 14.

The NYPD is an agency of Defendant City of New York, which is a political subdivision of the State of New York. *Id.* ¶¶ 6-7. Individual Defendants include Commissioner Sewell, Inspector Philip Rivera ("Rivera"), Inspector Wilson Aramboles ("Aramboles"), Deputy Inspector Joseph Seminara ("Seminara"), Deputy Inspector Richard Brea ("Brea"), and Captain Emilio Melendez ("Melendez") (collectively "Individual Defendants").

Commissioner Sewell has been sued in her official capacity as the Police Commissioner of the NYPD. *Id.* ¶ 8. Sewell was allegedly responsible for setting the policy of the NYPD and ensuring that the NYPD is free from discriminatory conduct during the relevant time period. *Id.* As I have noted, Sewell resigned as NYPD Commissioner on or around June 12, 2023. *See* Maria Cramer & Chelsia Rose Marcius, *N.Y.P.D. Commissioner Keechant Sewell to Resign*, N.Y. TIMES (June 12, 2023).

Rivera, Aramboles, Seminara, and Brea are alleged to have been the Commanding Officers at the 46th Precinct. Melendez is alleged to have been the Executive Officer of the 46th Precinct. *Id.* ¶ 9. Rivera, Aramboles, Seminara, Brea, and Melendez are sued in their individual and official capacities. *Id.*

## II.   FACTS[1]

Plaintiffs allege that Defendants discriminated against them on the basis of their Hispanic national origin and in retaliation for their complaints about discrimination.[2] Plaintiff Perez also asserts claims for age discrimination, and Plaintiff Benavides asserts claims for gender discrimination. *Id.* ¶¶ 1, 16-17, 42-62.

Plaintiffs claim that, as a result of the discrimination they experienced, they were denied career advancement opportunities, favorable assignments, and overtime pay. *Id.* ¶ 16.

### a.   Plaintiff Perez's Allegations

Perez alleges that he was subject to a "pattern of ongoing discriminatory conduct" beginning in December 2015 that resulted in a loss of pay, loss of promotional opportunities, loss of overtime opportunities, denial of special assignments, and being unfairly disciplined because of his age and/or Hispanic national origin. AC ¶ 18.

---

[1] The facts are taken from Plaintiffs' AC. Perhaps aware of the many deficiencies in their pleadings, Plaintiffs submitted along with their opposition to Defendants' motion to dismiss copies of their complaints to the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Decl. of Thomas M. Gambino, Esq. (ECF No. 33) ("Gambino Decl."), Ex. B ("Benavides EEOC Compl."), Ex. C ("Perez EEOC Compl."). However, "[i]t is well established in this district that a plaintiff cannot amend his pleadings in his opposition briefs." *Faculty, Alumni, & Students Opposed to Racial Preferences v. N.Y. Univ. Law Review*, No. 18-cv-9184 (ER), 2020 WL 1529311, at *7 (S.D.N.Y. Mar. 31, 2020); *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that a complaint cannot be amended through opposition briefing); *Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 86 (S.D.N.Y. 2023) (same). Moreover, this is not a case where the complaint "relie[d] heavily upon [the] terms and effect" of the EEOC complaint, "render[ing] the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). Accordingly, the Court will not consider the facts alleged in the EEOC complaints for the purpose of this motion to dismiss. Nor will I convert this to a motion for summary judgment.

[2] Plaintiffs use the terms ethnicity, race, national origin interchangeably throughout the AC to describe their Hispanic protected status. For the purposes of this opinion, the Court will use the term national origin to describe Plaintiffs' protected status.

Specifically, he alleges that Defendants Rivera, Aramboles, Brea, and Melendez disproportionately and unfairly filed disciplinary charges against him and other unidentified minority officers. *Id.* ¶ 22. Perez does not identify the date when any of these charges was filed or specify with what he was charged. As a result of these unidentified charges, he contends that on October 2, 2018, in order to avoid the risk that he would be fired if he fought the charges, he was "compelled to accept the penalties" of losing five days work, on February 27, 2017, was transferred off midnight tours, and, on some undated occasion, forced to guard hospitalized prisoners. *Id.* ¶¶ 21, 26-28.

Perez also alleges that, on various unspecified dates beginning in December 2015, he was denied patrol duty and given undesirable assignments, including: being sent to other precincts for a given tour, being assigned to fixed posts and transports, being required to guard hospitalized prisoners, being relegated to station house security, switchboard officer, and the clerical room. *Id.* ¶¶ 18, 23-24.

Perez, who was 51 or 52 years old at the time of the filing of this lawsuit, contends that younger and/or non-Hispanic officers were not subjected to the same sort of treatment. *Id.* ¶¶ 15, 23-24. He does not, however, identify any other Hispanic or older officers who were treated in the same manner he was, and he does not identify any younger or non-Hispanic officers who were treated differently and better than he was, let alone explain why those officers were similarly situated to him.

Perez alleges that he repeatedly requested a transfer since March 1, 2019, but that Defendant Brea denied all such requests in favor of younger and less qualified officers. *Id.* ¶ 20. He does not allege dates when he applied for transfers, dates of any subsequent denials, the frequency of the denials, nor does he identify any younger officers who were granted transfers.

Finally, Perez alleges that he was denied "taking overtime for pay and was only permitted to receive overtime in time," which he asserts contrasted the treatment of younger and/or non-Hispanic officers. *Id.* ¶ 29. Again, Perez does not specify when this occurred or who the younger and/or non-Hispanic officers were who were more favorably treated than he was with respect to overtime opportunities.

Perez claims that, as a result of the Defendants' discriminatory conduct, he lost out on unspecified career-enhancing opportunities and the chance to make significant overtime pay – in the approximate amount of $30,000 loss per year. *Id.* ¶ 25.

## b. Plaintiff Benavides' Allegations

Like Perez, Benavides alleges a continuing pattern of discriminatory conduct on behalf of Defendants – in his case, beginning in 2017. Like Perez, Benavides pleads in generalities, lumping allegations together and failing to specify when many specific incidents occurred. He generally asserts that he lost out on various unidentified promotional opportunities, changes in assignments, transfers and opportunities to earn overtime, and was generally denied opportunities to advance his career. AC ¶¶ 31-32. Benavides also alleges that he was unfairly disciplined and was treated in a manner inferior to non-Hispanic and female officers. *Id.* ¶ 33.

Benavides' story begins on September 3, 2017. On that day, non-parties Sgt. Michael Whalen ("Sgt. Whalen") and Sgt. Chin allegedly berated Benavides because he had filed an EEOC complaint against Sgt. Whalen. *Id.* ¶ 34(d). Thereafter, Sgt. Chin appeared at all of Benavides' roll calls (dates unspecified) to look for any uniform or equipment deficiencies. *Id.* ¶ 34(e). Benavides does not allege that he was ever disciplined or suffered any adverse employment consequence as

a result of Sgt. Chin's attendance at his roll calls. Sgt. Chin also denied Benavides' requests for Department Recognitions in October 2018, January 2019, and December 2020. *Id.* ¶ 34(f).

On March 6, 2018, a female supervisor, non-party Lt. Iris Espinosa n/k/a Iris Rafferty ("Lt. Espinosa"), disciplined Benavides and four other unidentified officers at a roll call. *Id.* ¶ 34(a). Benavides was disciplined for not wearing his hat, which he believes was pretext for gender discrimination – apparently because the officer who disciplined him was a woman. *Id.* He does not allege that female officers committed similar infractions and were not disciplined. Benavides lost four hours pay for this infraction. *Id.*

On December 3, 2018, Lt. Espinosa disciplined Benavides again, that time for arriving late to a training course in Brooklyn, due to "unexpected traffic" coming from Westchester "at the height of rush hour traffic." *Id.* ¶ 34(b). Benavides was then instructed to attend training on one of four other occasions. *Id.* He never attended any of the four trainings – on two occasions, he was sick, and on the other two occasions, he had assignments that took priority over the trainings. *Id.* Because of his failure to attend the trainings as instructed, Benavides again lost four hours pay. *Id.*

Benavides also alleges that, on unspecified occasions beginning in 2019, multiple supervisors gave him non-patrol duties and undesirable assignments, such as station house security, guarding hospitalized prisoners and fixed posts. *Id.* ¶ 35. Specifically, Benavides alleges that Sgt. Whalen, who is white, gave unnamed white officers preferential treatment over Benavides. *Id.* ¶ 34(c). Benavides alleges that two non-parties, Sgt. Reilley, a white male, and Sgt. Beharry, an African-American male, removed Benavides from patrol functions in favor of less experienced and/or non-minority officers. *Id.* ¶¶ 40-41. Benavides does not identify when these assignments were given or what specific tasks each supervisor assigned him, except that they were "non-patrol duties." As a result, Benavides asserts, he was prevented from making arrests or

engaging in other, unspecified career-furthering activities. *Id.* ¶ 35. Benavides was also denied a partner. *Id.* Benavides does not identify a single non-Hispanic and/or female officer who was treated more favorably than he was.

Benavides alleges being mocked by non-party Sgt. Rangier, a female supervisor, who made mocking and condescending comments about Benavides in front of his peers. *Id.* ¶ 36. Benavides does not allege when such comments were made or what those comments were.

In December 2020, Benavides was denied a change of tours. *Id.* ¶ 37. He was told that this was because he was being transferred to another unit, but this transfer never happened. *Id.*

On unspecified dates, Defendant Seminara, a white male, rejected Benavides' paid detail and off-duty employment applications, as well as Benavides' request for a mutual transfer. *Id.* ¶¶ 38-39. Benavides does not allege when he applied for these opportunities nor any female and/or non-Hispanic officers whose requests had been granted.


## III.   PROCEDURAL POSTURE

Perez and Benavides filed individual complaints with the EEOC on September 14, 2021, and September 13, 2021, respectively, detailing their allegations of discriminatory conduct. *See* Benavides EEOC Compl.; Perez EEOC Compl. Perez and Benavides received their right to sue letters on October 21, 2022, and October 31, 2022, respectively. AC ¶¶ 12-13, Ex. A, Ex. B.

Plaintiffs filed their initial Complaint in this action on January 18, 2023, *see* Compl. (ECF No. 1), and filed their first Amended Complaint on March 23, 2023. *See* AC.

On June 26, 2023, all Defendants except for Melendez filed a motion to dismiss. *See* Mot. Dismiss (ECF No. 18). At that time, Melendez was not yet a party to this action because he had yet been properly served.  Mem. Supp. Mot. Dismiss (ECF No. 19) at 2 n.2; Mem. Supp. Melendez's Mot. Join Mot. Dismiss (ECF No. 29) ("Melendez Mem. Supp.") at 3. Melendez was served on August 29, 2023 and on November 17, 2023, Melendez moved to join the other defendants' motion to dismiss.[3] *See* Aff. Service (ECF No. 25); Melendez Mot. Join Mot. Dismiss (ECF No. 28). On November 22, 2023, Plaintiffs cross moved to amended their Amended Complaint. *See* Mot. Amend Compl. (ECF No. 32).

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Dig., LLC v. Armstrong*, No. 20-cv-4313 (CM), 2020 WL 6064156, at *4 (S.D.N.Y. Oct 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court is

---

[3] Defendant Melendez asserts that the reason for the delay between being served and requesting to join the remaining Defendants' motion is because his counsel was on parental leave from August 24, 2023, until October 10, 2023. *See* Melendez Mem. Supp. at 3 n.1.

"not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555.

## DISCUSSION

**I.     DEFENDANT MELENDEZ'S MOTION TO JOIN DEFENDANTS' MOTION TO DISMISS IS GRANTED**

Plaintiffs do not oppose Defendant Melendez's motion to join the other Defendants' motion to dismiss. *See* ECF No. 31. Since there are no allegations unique to Defendant Melendez, his joining the other Defendants' motion to dismiss does not raise any new issues of law or fact that would prejudice Plaintiffs. *See Nowinski v. Coniglio*, No. 14-cv-6559 (FPG), 2017 WL 1021075, at *2 (W.D.N.Y. Mar. 16, 2017) (granting defendant's motion to join his co-defendant's motion to dismiss where granting such motion would not prejudice plaintiff). Therefore, Defendant Melendez's motion to join the other Defendants' motion to dismiss is granted.

**II.    DEFENDANTS' MOTION TO DISMISS IS GRANTED**

Defendants moved to dismiss for failure to state a claim per Rule 12(b)(6). For the reasons described below, Defendants motion to dismiss is granted.

### A. Plaintiffs' Claims Against the NYPD are Dismissed

Defendants argue, and Plaintiffs concede, that the NYPD is a non-suable entity. The Court agrees. N.Y. City Charter ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Jenkins v. City of New York*, 478

F.3d 76, 93 n.19 (2d Cir. 2007). Accordingly, all claims as asserted against the NYPD are dismissed with prejudice.

### B. Plaintiffs' Claims Against Commissioner Sewell are Dismissed

Former Commissioner Sewell moves to dismiss the claims asserted against her. That motion is also granted with prejudice.

The claims asserted against Commissioner Sewell are the same as those against all other Defendants – unlawful discrimination in violation of Title VII, the ADEA, and the NYSHRL; fostering a hostile workplace in violation of Title VII; and retaliation in violation of the NYSHRL.

To the extent that Commissioner Sewell is being sued under Title VII and the ADEA, these claims must be dismissed because Title VII and the ADEA do not impose liability for discrimination on individuals, even supervisors. *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). Although it has been suggested that Title VII and the ADEA might permit imposition of liability on individuals who are sued only in their official capacity, the law in this Circuit is to the contrary. *See Barbini v. First Niagara Bank N.A.*, No. 16-cv-7887 (NSR), 2022 WL 623184, at *10 (S.D.N.Y. Mar. 3, 2022) (holding that individuals may not be sued under Title VII or the ADEA in their official capacities) (collecting cases); *Carmody v. Village of Rockville Centre*, 661 F. Supp. 2d 299, 326-27 (E.D.N.Y. 2009) (holding that Title VII bars suit against individuals sued in their official capacities) (collecting cases).

Finally, to the extent that Commissioner Sewell is sued under the NYSHRL, the claims are dismissed because, while individual liability can be imposed under that statute, it can only be imposed on a manager who actually participated in the discriminatory conduct alleged, or who "encourage[ed], condon[ed], or approv[ed]" the discrimination. *EEOC v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497, 520 (E.D.N.Y. 2014). There is not a single allegation of fact in the

complaint tending to show that Commissioner Sewell was aware of the existence of the Plaintiff officers, let alone that she "encouraged, condoned, or approved" of any discrimination against them. It is perfectly obvious that the Commissioner was sued simply and solely because she was the police commissioner. She has no liability under the NYSHRL on that basis, so any claims asserted against her under that statute are also dismissed.

I note that the claims against the other individual Defendants – Rivera, Aramboles, Seminara, Brea, and Melendez – must also be dismissed with prejudice to the extent they are asserted under Title VII or ADEA. I dismiss those claims for individual liability *sua sponte* – even though these officers failed to raise this argument in their motions. I do not, however, dismiss the corresponding state law claims against those officers on this basis.

## C. Both Plaintiffs' Unlawful Discrimination Claims Under Title VII and the ADEA (First Cause of Action) Are Dismissed

### (1) The Law of Employment Discrimination Under Title VII and the ADEA

Claims of employment discrimination under Title VII and the ADEA are analyzed under the framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *Palmer v. Shchegol*, 406 F. Supp. 3d 224 (E.D.N.Y. 2016) (ADEA). Thus, to survive a motion to dismiss on an employment discrimination claim, the plaintiff must plead that he is a "member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. People forty years of age or older are protected from age discrimination under federal law. 29 U.S.C. § 631. Plaintiff Perez alleges that he is a member of the following protected classes: Hispanic (race, national origin), older persons (age 51 or 52). Plaintiff Benavides alleges

that he is a member of the following protected classes: Hispanic (race, national origin), gender (male).

An adverse employment action is "a 'materially adverse change' in the terms and conditions of employment" and "must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). In other words, to properly plead an adverse employment action, a plaintiff must demonstrate more than his own subjective dissatisfaction – he must plead that the alleged adverse action "materially worsened [his] working conditions." *Smith v. City of New York*, 385 F. Supp. 3d 323, 335-36 (S.D.N.Y. 2019) (requiring that receipt of undesirable work assignments or disciplinary action "be accompanied by a material detriment to [the] employee's working conditions to constitute an adverse employment action"); *see also Beyer v. Cty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) (requiring "plaintiff to proffer objective indicia of material disadvantage" to demonstrate that a denial of transfer was an adverse employment action).

Plaintiffs' complaint must also provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. "An inference of discrimination can arise from circumstances including . . . 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Id.* at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Here, Plaintiffs make no allegations that Defendants used any "ethnically degrading" language or made "invidious comments" about anybody in Plaintiffs' protected groups. And of

course, Plaintiffs have not been fired. Instead, they theorize that they were treated less favorably on the job than those outside of their protected groups – non-Hispanic officers, younger officers, women officers.

"If a plaintiff relies on evidence that he was treated less favorably than employees outside of his protected group to raise an inference of discriminatory intent, he must establish that he was 'similarly situated in all material respects' to those employees." *Smith*, 385 F. Supp. 3d at 338 (citing *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). At the pleading stage, generalities will not get a plaintiff over the *Twombly/Iqbal* plausibility hurdle; in order to survive a motion to dismiss the complaint must contain some non-conclusory allegations of fact tending to show that there were in fact comparably situated individuals who were not members of the protected class and who were treated differently than the plaintiffs were. "When a disparate treatment claim is entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were . . . , how their conduct compared to plaintiffs' or how they were treated differently by defendants, dismissal is often appropriate." *Desrosiers v. Summit Sec. Servs., Inc.*, No. 21-cv-10941 (JPO), 2022 WL 13808524, at *3 (S.D.N.Y. Oct. 21, 2022) (quoting *Blige v. City Univ. of N.Y.*, No. 15-cv-08873 (GBD) (KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017)).

### (2) The Statute of Limitations

Under Title VII and the ADEA, a plaintiff is barred from asserting claims based on events that occurred more than 300 days prior to the filing of a charge of discrimination with a state or local employment agency. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B); *see Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010) (Title VII); *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016) (ADEA). In this case Perez filed

his charge with the EEOC on September 14, 2021, so his 300-day period begins on November 18, 2020; Benavides filed his charge on September 13, 2021, so his 300-day period begins on November 17, 2020.

To the extent that the complaint dates the occurrence of any specific acts of discrimination, many of those dates fall well outside the 300-day period. Specifically, Perez alleges discriminatory conduct on February 27, 2017, October 2, 2018, and March 1, 2019, and Benavides alleges discriminatory conduct on September 3, 2017, March 6, 2018, in October 2018, on December 3, 2018, and in January 2019. *See* AC ¶¶ 20, 26-27, 34(a), (b), (d), (f). Those claims all fall outside the limitations period and so are barred. And we have no idea when many of the purported instances of discrimination took place – for example, neither Plaintiff gives the date of any promotional opportunity that he was denied, or the any dates when they were denied patrol functions. One can fairly infer that these things, too, may be time barred

In order to get around this manifest defect in their complaint, Plaintiffs argue that they need not allege specific dates and can recover for conduct outside the 300-day period, since they have alleged a pattern of discrimination against them to which the so-called continuing violation doctrine applies. Plaintiffs also argue that their earlier claims are timely because the statute of limitations was tolled for 228 days between March 20, 2020 and November 3, 2020, by Governor Cuomo's COVID-19 Executive Orders. *See* N.Y. Comp. Codes R. & Regs. Tit. 9 §§ 8.202.67, 8.202.8 (2020) (tolling the statute of limitations for state law claims from March 20, 2020 through November 3, 2020, for a total of 228 days); *see also Afanassieva v. Page Transp., Inc.*, No. 21-3090, 2022 WL 7205009, at *1 (2d Cir. Oct. 13, 2022). Neither of these arguments helps them.

The COVID toll is irrelevant to this case because the toll only applies to claims that accrued or were pending during the 228-day tolling period (March 20, 2020 through November 3, 2020).

The 300-day period preceding the filing of Plaintiffs' Title VII and ADEA charges began after the toll period expired on November 3, 2020. So the COVID toll does not apply to add additional time for Plaintiffs to pursue their claims.

And the continuing violations doctrine is of no help to Plaintiffs.

Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001). "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004).

However, in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002), the United States Supreme Court cabined application of the continuing violation doctrine. The Court specifically disallowed a plaintiff to aggregate discrete acts of discrimination occurring over a period of time and claim that he was the victim of a continuing violation. The Court explained that, "Discrete acts such as termination failure to promote, denial of transfer, or refusal to hire are easy to identify," and are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." "Instead, 'Each discrete discriminatory act starts a new clock for filing charges alleging that act,' and even serial violations – a series of discrete but related acts of discrimination – do not warrant application of the continuing violations doctrine." *Milani v. Int'l Bus. Machs. Corp., Inc.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004) (quoting *Morgan*, 536 U.S. at 113-14).

All Plaintiffs have done here is aggregate discrete acts of discrimination – failure to be transferred, failure to receive desirable assignments, failure to receive overtime, failure to be recognized, being mocked, and being unfairly disciplined – each of which took place on an ascertainable (though largely unpleaded) date. Plaintiffs argue that this amounts to a continuing pattern of discrimination, but after *Morgan*, this argument fails. *See Morgan*, 536 U.S. at 114 (finding that denial of transfer is a discrete act); *Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 500 (S.D.N.Y. 2010) (finding that retaliation, denial of overtime, and receiving unfavorable job assignments are discrete acts).

Additionally, "courts should be mindful that, in this Circuit, the continuing violations doctrine is 'disfavored' outside of a hostile work environment situation, and should only be applied in 'compelling circumstances.'" *Williams v. N.Y. City Dept. of Educ.*, No. 19-cv-1353 (CM), 2019 WL 4393546, at *9 (S.D.N.Y. Aug. 28, 2019) (quoting *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 279 (S.D.N.Y. 2019)). No such compelling circumstances are pleaded here.

The continuing violation doctrine can apply to a claim for hostile work environment. *Morgan*, 536 U.S. at 115. However, its availability depends on whether a plaintiff has alleged facts sufficient to support an inference that he suffered from a hostile work environment. That will be discussed in Section II.D, *infra*.

### (3) Perez's Title VII and ADEA Discrimination Claims

Perez alleges that he was discriminated against because he was denied transfers, was issued unfair disciplinary citations, was given menial tasks, and was denied overtime. Perez does not allege the date when many of these things occurred, and the alleged instances of discrimination for which dates are provided all occurred in 2017, 2018, or 2019 – well before November 18, 2020,

the beginning of his 300-day statutory period. This is fatal to his complaint, because each instance of the alleged behavior – each time he was denied a transfer that he sought, each time he was issued a disciplinary citation because he was Hispanic and not for actual misbehavior, each time he was allegedly given menial tasks that younger, non-Hispanic officers did not have to do – qualifies as a separate instance of discrimination. These separate instances cannot be combined into a single "continuing" violation, for pleading purposes or for statute of limitations purposes. Perez must demonstrate that each such instance occurred within the 300-day period. To the extent that dates are pleaded, none of them did.

Accordingly, Perez's claims for unlawful discrimination under the ADEA and Title VII (First Cause of Action) are dismissed.

Moreover, Perez's complaint is very badly pleaded, but to the extent it says anything at all, it is the familiar tautology: "I am a member of a certain protected group; something bad happened to me at work; therefore, it happened because I am a member of a certain protected group." This type of pleading does not state a claim under Title VII or the ADEA. *See Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231, 234-35 (2d Cir. 2002) ("[The plaintiff] has done little more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his race. This is not sufficient.") (internal quotation omitted); *Marte v. Montefiore Med. Ctr.*, No. 22-cv-03491 (CM), 2022 WL 7059182, at *4 (S.D.N.Y. Oct. 12, 2022) (finding conclusory assertion that plaintiff did not get a COVID-19 vaccination exemption and was subsequently fired because of her membership in a protected group insufficient to state a claim under Rule 12(b)(6)); *Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10-cv-2548 (CM) (RLE), 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) ("[N]aked assertions by plaintiff that some protected demographic factor motivated an employment decision, without a fact-specific allegation of a causal link

between defendant's conduct and the plaintiff's membership in a protected class, are simply too conclusory to withstand a motion to dismiss.").

### (4) Benavides' Title VII Discrimination Claim

Benavides alleges he was discriminated against because he was unfairly disciplined, given menial tasks, denied department recognitions, mocked, denied a change of tours, was denied paid detail and off-duty employment, and denied transfers. These are all discrete acts, and thus the continuing violations doctrine does not apply to Benavides' unlawful discrimination claim. Benavides identifies the dates when some of these things occurred – September 3, 2017, when Sgt. Chin berated him; March 6, 2018, and December 3, 2018, when he was disciplined; October 2018, January 2019, and December 2020 when he was denied department recognitions; December 2020, when he was denied a change of tours. Aside from the two instances in December 2020, all those things occurred prior to November 17, 2020, which is the earliest actionable date for a federal anti-discrimination claim by Benavides. The fact that Benavides alleges multiple instances of what he considers to be discriminatory behavior does not entitle him to the benefit of the continuing violation doctrine for his claims of discrimination.

Accordingly, only the following acts alleged in the AC are timely under Title VII: Sgt. Chin denying Benavides' request for a recognition and being denied a change of tours. These discrete acts are dated and fall within the limitations period. However, that alone does not make them actionable.

Benavides' claim that he was not given a recognition award is not actionable in the absence of factual allegations tending to show that the denial was based on his race or gender – of which there are none. Moreover, even if Benavides had properly pleaded that he was the victim of

discrimination, lack of appreciation, without more, does not rise to the level of an adverse employment action. *See Perad v. Jamaica Hosp. Med. Ctr.*, No. 18-cv-6661 (KAM) (RER), 2020 WL 5633153, at *12 (E.D.N.Y. Sept. 20, 2020) (finding that employer's failure to show appreciation toward plaintiff does not constitute an adverse employment action).

Benavides' allegation that he was denied a change of tours also fails to support a claim of disparate treatment, for the same reasons already discussed – he fails to allege either than this had a materially adverse impact on his employment, or that similarly situated officers who were not Hispanic and/or male were give tour changes when they asked while he was not.

In short, the complaint is woefully deficient in every way. Benavides' Title VII unlawful discrimination claim (First Cause of Action) is therefore dismissed.

## D. Plaintiffs' Title VII Hostile Workplace Claims (Second Cause of Action) Are Dismissed

Plaintiffs allege that Defendants subjected them to a hostile work environment, in violation of Title VII, 42 U.S.C. § 2000e-2(a), because of their Hispanic national origin. But the complaint fails to plead such a claim.

### (1) The Law of Hostile Workplace Claims Under Title VII

To successfully plead a hostile work environment claim under Title VII, a plaintiff must show that his "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). When determining whether an environment is "hostile" or "abusive" under Title VII, the Court "must consider the totality of circumstances, including 'the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23).

In order to state a claim, Plaintiffs must plead not only that they found the environment offensive, but that a reasonable person would have found the workplace to be hostile or abusive. *Harris*, 510 U.S. at 21-22.

Furthermore, even if the Plaintiffs adequately allege an objectively hostile work environment, they "will not have a claim . . . unless [they] can also demonstrate that the hostile work environment was caused by animus towards [them] as a result of [their] membership in a protected class." *Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003). In other words, "[a]n environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes." *Forts v. City of N.Y. Dep't of Corr.*, No. 00-cv-1716 (LTS) (FM), 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Ennis v. Sonitrol Mgmt. Corp.*, No. 02-cv-9070 (TPG), 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006) (citations omitted).

So, in order to survive a motion to dismiss, Plaintiffs must allege (1) that they were subjected to a hostile work environment, as that term is defined in federal law; (2) that a reasonable person would have found their workplace hostile or abusive, and (3) that the hostile environment was due to their protected characteristic.

Unlike Plaintiffs' unlawful discrimination claims, the continuing violation doctrine may apply to their hostile work environment claims. As the Second Circuit has instructed:

> [H]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Accordingly, consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.

*McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing *Morgan*, 536 U.S. at 115) (internal quotation marks omitted).

However, simply alleging one timely event does not automatically pull every untimely allegation into one hostile workplace claim – instead, *Morgan* requires that the timely act be sufficiently related to the earlier, untimely acts. *See McGullam*, 609 F.3d at 77. In *Morgan*, the Court provided an illustration to describe its holding:

> (1) Acts on days 1-400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1-100 and on day 401, but there are no acts between days 101-400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. On the other hand, if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

*Morgan*, 536 U.S. at 118.

In *McGullam*, the Second Circuit focused on "the commonality of the environment in which the incidents took place . . . , the nature of the incidents, and the temporal discontinuity between the incidents" to assess whether incidents are sufficiently related so as to be part of the same hostile environment claim. *McGullam*, 609 F.3d at 81 (Calabresi, J., concurring) (describing the majority).

### (2) Perez's Hostile Workplace Claim

As discussed above, Perez has not pleaded a single event that occurred within the statutory time period. Therefore, the Court need not engage in an analysis as to whether any earlier or undated alleged events contributed to a hostile work environment. Perez's Title VII hostile workplace claim (Second Cause of Action) is dismissed.

### (3) Benavides' Hostile Workplace Claim

Benavides has alleged discriminatory conduct within the statutory time period. As discussed above, Benavides' timely allegations include being denied a recognition and being denied a change of tours, both occurring in December 2020. The Court then must assess whether "that conduct 'anchors' earlier, related acts . . . allow[ing] the presentation of a single, timely claim." *Williams*, 2019 WL 4393546, at *7 (citing *McGullam*, 609 F.3d at 75).

Benavides' untimely or undated allegations include losing promotional opportunities, Sgt. Chin attending Benavides' roll calls, being mocked by Sgt. Rangier, Seminara denying Benavides' requests for paid detail, off-duty employment, and a mutual transfer, receiving undesirable assignments beginning in 2019, being berated by Sgt. Chin on September 3, 2017, being disciplined by Lt. Espinosa on March 6, 2018, and December 3, 2018, and Sgt. Chin denying Benavides' requests for recognitions in October 2018 and January 2019.

Benavides' December 2020 denial of a change of tours is not sufficiently related to any of these events so as to give Benavides the benefit of the continuing violation doctrine. First, Benavides does not allege who denied tour change request, and whether this same supervisor contributed to any of the earlier or undated conduct alleged. Second, the denial of a change of tours is not similar in nature to any of the earlier or undated events. Lastly, there is no indication of temporal proximity to any of the earlier or undated events.

As to the December 2020 denial of recognition, that is plainly related to the alleged October 2018 and January 2019 recognition denials. Drawing all reasonable inferences in favor of the Plaintiff, it is plausible that these events are related so as to give rise to a hostile workplace claim that would allow Plaintiff to recover for all three denials of recognition – especially if facts were pleaded tending to show that the denials were somehow related to the filing of Benavides' complaint against Sgt. Whalen.

But the problem is that being denied recognition, whether once, twice or thrice, is simply "too trivial to contribute to a Title VII hostile workplace claim." *McGullam*, 609 F.3d at 76. So is being denied a change of tours. This behavior is neither sufficiently severe nor pervasive to qualify as creating a hostile work environment. *See Duplan v. City of New York*, 888 F.3d 612, 618, 627 (2d Cir. 2018) (finding that being assigned menial tasks, being ignored, being denied promotions, among other factors, was insufficient to support hostile workplace claim); *Littlejohn*, 795 F.3d at 321 (finding allegations that employer made negative statements about plaintiff, increased plaintiff's schedule, wrongfully reprimanded plaintiff, among others, were insufficient to state a hostile workplace claim); *McGullam*, 609 F.3d at 76 (finding that frequent comments by male employees referring to women as "chickies" were insufficient to sustain a hostile workplace claim); *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591-92 (S.D.N.Y. 2018) (finding

allegations of "heavy scrutiny and criticism, discipline for inadequate work product, refusal to authorize overtime, use of a 'harsh and sarcastic tone'" among others, were insufficient to state a hostile work environment claim); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-cv-7586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug 19, 2011) (finding that diminished job responsibilities, exclusion from meetings, increased workload of menial tasks, among other factors, was insufficient to show that defendants' conduct was sufficiently severe or pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012). No facts whatever are pleaded tending to show that Benavides' workplace was "permeated" with insult, ridicule or intimidation. Benavides has also alleged no facts tending to show that these events in any way affected his work performance.

And above all, no facts are alleged tending to show that any of these things occurred BECAUSE Benavides is Hispanic.[4] He has alleged no facts tending to show that comments were made or behavior was perpetrated that was occasioned by his Hispanic national origin. And he has not alleged a single fact tending to show that similarly situated non-Hispanic officers were treated differently from him, so as to raise an inference that their Hispanic national origin played a role in his treatment.

Benavides' work environment was, at most, unpleasant. But a merely unpleasant workplace is not actionable under Title VII. Benavides' Title VII hostile workplace claim (Second Cause of Action) is dismissed.

### E. The Court Declines to Exercise Jurisdiction Over Plaintiffs' Claims Under the NYSHRL (Third and Fourth Causes of Action)

---

[4] Benavides' gender-based claims are not part of the hostile work environment allegations.

This leaves the Plaintiffs' claims under New York State law. A district court may decline to exercise supplemental jurisdiction over non-federal claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Plaintiffs' federal claims having been dismissed, the Court declines to exercise its supplemental jurisdiction over any claims arising under state law. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## III.    PLAINTIFFS' CROSS MOTION TO AMEND COMPLAINT IS GRANTED

Plaintiffs request the opportunity to amend its complaint again to cure the deficiencies in the AC. Fed. R. Civ. P. 15(a)(2) states that, "The court should freely give leave [to amend] when justice so requires." Under this liberal standard, leave is generally given as long as (1) the party seeking the amendment has not unduly delayed, (2) that the party is not acting in bad faith or with a dilatory motive, (3) the opposing party will not be unduly prejudiced by the amendment, and (4) the amendment is not futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendants argue that leave to amend should be denied because amendment would be futile. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Comm'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). In assessing whether the proposed complaint states a claim, we accept as true all non-conclusory factual

allegations in the complaint and proposed amendments, and draw all reasonable inferences in Plaintiffs' favor. *Id.*

Plaintiffs' Proposed Second Amended Complaint doesn't cure the deficiencies of the First. The proposed pleading suffers from the same deficiencies as the Amended Complaint – generalized pleading, failure to identify when specific acts of discrimination occurred, failure to plead any facts from which a trier could infer that Plaintiffs' membership in a protected class was the reason for their allegedly discriminatory treatment. And much of what Plaintiffs allege in conclusory and generalized fashion does not qualify as adverse employment action. Were that complaint to be filed, it would indeed be a futile exercise.

However, I cannot conclude that it would be futile to allow Plaintiffs to replead the dismissed claims. It may be possible for a Plaintiffs to identify specific acts of discrimination that are timely and for which they can plead facts tending to show that their membership in a protected class caused them to suffer adverse employment actions. There may be facts in Plaintiffs' EEOC complaints that, if plead properly, could alter the Court's analysis of their Title VII and ADEA claims. That is not what the Second Amended Complaint pleads, and I do not know if Plaintiffs can file such a pleading. But I will give them an opportunity to do so.

However, Plaintiffs must be mindful of their duty to submit a well-pleaded complaint – to the extent that they can. In order to avoid (or survive) a second motion to dismiss, Plaintiffs must set forth with specificity each discrete event giving rise to the alleged discrimination, including: what happened, when it happened, who caused it, why it was unfair, and the factual basis for inferring that it was discriminatory – which must be more than "I am a member of a protected class and something bad happened to me." Plaintiffs must also allege that and when they requested such things as overtime, promotional opportunities, desirable tasks or transfers, and explain why they

were qualified for those opportunities. Plaintiffs may allege include facts alleged in their EEOC complaints, but such allegations must be dated and must be timely under Title VII and the ADEA. Failure to provide specific dates on which specific acts of discrimination occurred will be taken as proof that the actions are not timely.

And, if Plaintiffs allege earlier actions (i.e., outside of the 300-day statutory period) as part of their Title VII hostile workplace claims, Plaintiffs must explain how those earlier allegations are related to any timely allegations so as to give rise to a single hostile workplace claim.

Plaintiffs' discrimination and retaliation claims under the NYSHRL must also be properly pleaded, but Plaintiffs should be aware that the Court will not accept supplemental jurisdiction over the state law claims if Plaintiffs' federal claims are improperly pleaded.[5]

Finally, the parties and counsel are reminded of their obligations under Fed. R. Civ. P. 11.

## CONCLUSION

For the foregoing reasons, Defendant Melendez's motion to join the motion to dismiss is GRANTED without opposition, Defendants' motion to dismiss per Rule 12(b)(6) is GRANTED, and Plaintiffs' cross motion to amend the complaint is GRANTED. Any amended complaint must be filed within fifteen days after the date of this opinion.

---

[5] Of course, the NYSHRL adheres to a three-year statutory period, N.Y. C.P.L.R. § 214, so some discriminatory acts that are untimely under Title VII or the ADEA may be timely under the New York State law. But, again, the Court will not accept supplemental jurisdiction over Plaintiffs' state law claims if they fail to properly allege their federal law claims.

The Clerk of the Court is respectfully requested to remove ECF Nos. 18, 28, and 32 from the Court's list of open motions.

This constitutes the decision and order of the Court.

Dated: February 29, 2024

_____

U.S.D.J.

BY ECF TO ALL COUNSEL